UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES,

Plaintiff,

v.

JULIAN RICKER,

Defendant.

Case No. 3:24-CR-33-ART-CLB-1

ORDER

Before the Court is Defendant Julian Ricker's motion to suppress evidence related to the search of his home on August 1, 2024, based on alleged violations of the Fourth Amendment. (ECF No. 31.) The Government filed an opposition, and Defendant filed a reply. (ECF Nos. 38, 43.) The Court held oral argument on July 13, 2026. (ECF No. 49.) For the reasons stated below, the Court grants Defendant's Motion.

## I. Factual Background

On August 1, 2024, Isabela Feliciano, with whom Mr. Ricker was going through a break-up, reported to the Elko Police Department that she had found items that she believed to be explosives in Mr. Ricker's residence. (ECF No. 31-1 at 5.) Ms. Feliciano showed Officer Erik Anderson photos of the materials, which he showed to Lieutenant Moore, a Bomb Technician. (*Id.*) Officer Anderson and Lieutenant Moore decided to go to the residence to collect the materials. (*Id.*)

Ms. Feliciano met the officers outside the residence. (*Id.*) She let the officers into the home with a key from her wallet, and led them through the house to the bedroom, where she indicated that the materials were inside a locked safe on top of the bookcase. (ECF No. 31-4, Officer Anderson Bodycam Footage, 6:33-35, 7:05-7:47.) She told the officer that she found the items when she was packing

her things to move out and "went through [Mr. Ricker's] stuff." (ECF No. 31-2 at 3; ECF No. 38-3, Agent Robbins Phone Call, 3:24-28.) She said that she was doing some "extra snooping" after suspecting that Mr. Ricker was cheating on her. (ECF No. 31-4, Officer Anderson Bodycam, 0:30-40.) She repeatedly called herself a "snooper" and refers to her actions as "snooping" around Mr. Ricker's things. (*Id.* at 5:45-6:05; 8:10-8:20; 17:15-17:39.) Ms. Feliciano explained to the officers that she found the key to the safe, opened it, and found the materials. (*Id.* at 5:40-5:58.) When asked by Agent Robbins from ATF whether she ever used the safe, Ms. Feliciano denied that the safe was hers, stating multiple times, "it was his." (ECF No. 38-3, Agent Robbins Phone Call, 4:31-4:50.)

In the bedroom with law enforcement, Ms. Feliciano pointed to the safe on the bookshelf, which was surrounded by other objects belonging to Mr. Ricker. (ECF No. 31-4, Officer Anderson Bodycam, 7:40-7:52.) When asked by Lieutenant Moore what the safe is, Ms. Feliciano responds that she does not know. (*Id.* at 8:30-8:40.) The officers removed the items surrounding the safe, Officer Anderson grabbed the keys, Lieutenant Moore placed the safe on a table, opened it, and removed its contents. (*Id.* at 8:40-9:00.)

The officers then searched the rest of Mr. Ricker's bedroom, including a second safe that Ms. Feliciano had not previously looked through. (*Id.* at 12:38-12:40.) Before leaving, Officer Anderson asked Ms. Feliciano if there are any other "places that are explicitly off limits." (*Id.* at 13:39-13:45.) She said there are not. Lieutenant Moore took the explosive materials out of the house, and Officer Anderson completed his interview with Ms. Feliciano. (ECF Nos. 31-1, 31-3.)

## II. Legal Standard

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. "A warrantless search of a house is per se unreasonable and absent exigency or consent, warrantless entry into the home is impermissible

under the Fourth Amendment." *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000). Further, a person has an expectation of privacy in his or her private, closed containers. *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998). The government bears the "heav[y]" burden of proof to establish the existence of effective consent from the individual whose property is searched or from a third party who possesses common authority over the premises. *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). To meet this burden, the Government must demonstrate that the third party had either actual or apparent authority to consent to the search. *United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir. 2003).

"Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993). In assessing whether an officer's belief was objectively reasonable, the court considers the facts available to the officer at the moment of the officer's warrantless entry into a home or relevant search of an area. *Id.* at 765. The Government must show that the individual had the authority "to consent to each specific area searched, not just authority to consent to a generalized search of a residence." *United States v. Arreguin*, 735 F.3d 1169, 1175 (9th Cir. 2013) (cleaned up).

The Fourth Amendment does not apply to searches or seizures conducted by a private individual not acting as an agent of the government nor with the participation or knowledge of any governmental official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal citation omitted). Whether a law enforcement officer can accept and use evidence that a private party discovers during a private search depends on whether that individual's expectation of privacy has already been frustrated. *See United States v. Phillips*, 32 F.4th 865, 868 (9th Cir. 2022). An expectation of privacy can be frustrated by revealing the

contents of an otherwise private container to the general public or law enforcement. *Id.* at 869 (defendant's expectation of privacy in his laptop was frustrated when his fiancé brought his laptop to the police station and scrolled through its contents).

"Evidence seized pursuant to an unjustified and illegal search must be suppressed." *United States v. Manansingh*, 281 F. Supp. 3d 1096, 1100 (D. Nev. 2017), aff'd, 733 F. App'x 390 (9th Cir. 2018) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

**III. Analysis**

Mr. Ricker argues that the government has not met its burden to show that it had a valid exception to the warrant requirement to enter Mr. Ricker's home, go into his bedroom, and open his personal safe because Ms. Feliciano lacked actual or apparent authority to consent to a search of any of those three areas. (ECF No. 31 at 5-6.) While the Government argues that it had valid consent to enter the home and bedroom, it concedes that it lacked actual or apparent authority to access the safe. For the safe, the Government relies on the holding of *United States v. Jacobsen*, 466 U.S. 109, 111 (1984), arguing that police merely recreated Ms. Feliciano's private search and Mr. Ricker no longer had an expectation of privacy in his safe. (ECF No. 38 at 6.) Mr. Ricker argues that *Jacobsen* cannot be extended to a warrantless entry of a home, bedroom, and locked safe. (ECF No. 43 at 3.) Following the Ninth Circuit's decision in *United States v. Young*, 573 F.3d 711, 714 (9th Cir. 2009), the Court holds that *Jacobsen* does not apply and the warrantless search of Mr. Ricker's safe inside his home was unlawful.

In *Jacobsen*, the Supreme Court held that the government may replicate a private party's search without a warrant so long as it does not exceed the scope of the original search and thereby frustrate a legitimate interest in privacy. 466 U.S. at 115. *Jacobsen* concerned a package that had been placed with FedEx, a

mail carrier, whose employees inspected the package, suspected it contained cocaine, and notified law enforcement. 466 U.S. at 121-122. When authorities arrived at the mail carrier facility, they searched and seized the already unsealed package and field tested its contents. *Id.* The question before the Supreme Court was whether the field test, which exceeded the scope of the initial private search by the FedEx employees, was a search or seizure under the Fourth Amendment. *Id.* at 123. The Supreme Court held that it was not, observing that the initial seizure of the package and subsequent field testing by authorities were reasonable because law enforcement did not "compromise any legitimate interest in privacy" where a third party had already opened the package and it contained "contraband and little else." *Id.* at 123; *see also United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (applying *Jacobsen* where a defendant brought his computer to a third party for repairs and knew it would be inspected).

The Ninth Circuit in *Young* declined to apply *Jacobsen* to a warrantless search of a hotel room, reasoning that a hotel room is like a home. In *Young*, the defendant's hotel room was searched by staff after he was accused of a theft. *Young*, 573 F.3d 711, 714 (9th Cir. 2009). The hotel staff found a firearm in the front pocket of his backpack and called law enforcement. *Id.* at 715. While the defendant was locked out of his room, hotel security escorted law enforcement back to the room, where an officer waited outside while hotel security opened the closet, retrieved the backpack, and showed the officer the firearm. *Id.* at 715. Despite the government's urging, the court declined to apply *Jacobsen* because the defendant had a "legitimate and significant expectation of privacy" in the hotel room and its contents. *Id.* at 721. The court explained that hotel room "is like a home," citing two cases by other circuit courts holding that *Jacobsen* did not apply to a warrantless search of a motel room or private residence. *Id.* at 720-21 (citing *United States v Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (motel room); *United States v. Paige*, 136 F.3d 1012, 1021 n. 11 (5th Cir.1998) (private

residence)). Unlike the package in *Jacobsen*, whose entire contents were "obvious" and "contraband," neither the defendant's hotel room nor his backpack contained only contraband. *Id.* at 721. The court in *Young* explained that warrantless searches of closed packages and containers, like the defendant's backpack, are "presumptively unreasonable," and that a hotel guest "has a legitimate and significant privacy interest in the room's contents, and does not lose his expectation of privacy against unlawful government intrusions into his closed briefcase or the contents of his computer hard drive when hotel staff sees the briefcase, laptop, or other belongings while cleaning the room or changing a lightbulb." *Id.* at 721 (citing *Jacobsen*, 466 U.S. at 114-15). The Court concluded that *Jacobsen* has a "very restricted application" that should not be applied to warrantless searches of private residences and held that the search was unconstitutional. *Id.* at 720-21.

Since *Young*, the Ninth Circuit has reiterated that *Jacobsen* does not apply to a warrantless search of a private residence. *See Phillips*, 32 F.4th at 872. In *Phillips* the defendant's wife found child pornography on his laptop, brought the laptop to the police station, and recreated for police the search she had done. *Id.* at 867. The Court found that *Jacobsen* applied because the wife's private search was identical to the one she did for police. *Id.* at 870-71. In rejecting the defendant's argument that the search was unlawful under *Young*, the Ninth Circuit stated, "Unlike *Young,* but like *Jacobsen,* this case does not involve a warrantless entry into a home or its equivalent." *Id.* at 872. The court in *Phillips* reasoned that the critical aspect in *Young* was the "unique privacy interests an individual has in his residence," not whether the backpack contained contraband, adding that "no prior private search and no level of certainty regarding what the second search would uncover" could have allowed the warrantless search. *Id.*

Because *Young* not *Jacobsen* controls here, the warrantless search of Mr.

Ricker's private safe inside his home and without his consent was unlawful. Ms. Feliciano searched a container that did not belong to her within a private home. When she reported the contents to police, she did not bring the safe to the police station. Instead, law enforcement returned with her to Mr. Ricker's home and entered his bedroom, and rather than requesting Ms. Feliciano replicate her search, conducted a search of the safe on their own accord. Even assuming without deciding that the officers had consent to enter Mr. Ricker's home and bedroom, the Government concedes they lacked valid consent to search Mr. Ricker's safe. *Jacobsen* does not apply here because Mr. Ricker did not relinquish his privacy interest in his safe by offering it to a third party, the police did not limit the scope of their search to what Ms. Feliciano had performed, and they were not "virtually certain" that the safe contained contraband. *Young* controls because the police searched a locked container inside Mr. Ricker's home without a warrant or his consent.

The Court finds that police conducted a warrantless search of Mr. Ricker's safe in violation of the Fourth Amendment.

**IV. Conclusion**

It is therefore ordered that Mr. Ricker's Motion to Suppress (ECF No. 31) is GRANTED.

Dated this 21st day of August, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE